Argued and submitted February 22, reversed and remanded for further proceedings in part; otherwise affirmed August 4, 1999, petition for review denied January 18, 2000 (329 Or 589)

CHAD A. RAMSEY,
*Appellant,*

*v.*

S. Frank THOMPSON,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

(97C-10193; CA A101460)

986 P2d 54

George W. Kelly argued the cause and filed the briefs for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

Petitioner appeals from an adverse judgment in this action for post-conviction relief. ORS 138.650. He raises two assignments of error: (1) the trial court erred in determining that his criminal trial counsel's failure to call two witnesses and alleged "conflict of interest" did not breach the standard of constitutionally adequate representation; and (2) the court erred in denying his pretrial motion to amend his petition. We reject the first assignment of error without further discussion. However, we conclude that the trial court abused its discretion in denying petitioner's motion to amend his petition for post-conviction relief. ORS 138.610. Consequently, we reverse and remand for further proceedings.

On January 17, 1997, petitioner filed a *pro se* petition for post-conviction relief. The trial court subsequently appointed counsel for petitioner and, in April 1997, the court set an initial trial date of September 5, 1997. In June 1997, the court appointed substituted counsel for petitioner's first attorney, who had not yet filed a formal petition for post-conviction relief.

Following the appointment of substituted counsel, the court reset the trial date to December 4, 1997. On October 3, 1997, petitioner's counsel filed the formal First Amended Petition for Post-Conviction Relief. Paragraph six of that petition alleged, in part:

"1.   Petitioner's rights to effective assistance of counsel * * * were violated when [petitioner's counsel] unreasonably and prejudicially failed to diligently and conscientiously exercise skill and professional judgment * * * in the following particulars:

"a.   Failing to subpoena Salem Police Department records and/or personnel regarding the victim in this case to use at trial and/or in rebuttal that in fact the victim was a drug dealer and under investigation by their department;

"b.   Failing to call eye-witness Scott Christman, the victim's stepson, after subpoenaing said person for trial. Mr. Christman could have testified that at the time of the shooting, Petitioner was unarmed;

"c. Failing to compel marshalls to put witnesses on the stand;

"d. Failing to advise the court that he had a conflict of interest in this case as a result of his representation of two conflicting cases. * * *

"e. Failed to investigate potential witnesses and call them at the time of trial * * *;

"f. Failed to request a competency hearing on eyewitness * * * after the district attorney claimed that [the witness] was unfit to testify; and

"g. Failed to present a proper theory of self-defense in this case for his failure to call the proper witnesses.

"2. Petitioner's right to a fair trial and due process was violated when:

"* * * * *

"c. The prosecution coerced [a potential witness] to evade trial testimony and evade subpoena by defense counsel when said witness would have testified that the victim called him just before meeting the Petitioner and told him that he was going to kill Petitioner;

"* * * * *

"e. Petitioner was denied his right to oral argument on his motion for a new trial;

"* * * * *

"3. Petitioner's sentence is illegal in that:

"a. The court, prior to sentencing, denied Petitioner time to complete a psychological evaluation that had already been scheduled. The psychological evaluation was important to dispute a 1985 evaluation that deemed Petitioner had violent propensities. The 1985 evaluation was used as a determining factor in the upward departure and consecutive sentences given to Petitioner;

"b. The court used a juvenile conviction for burglary, battery, unauthorized use of a motor vehicle and grand theft, which had not been proven by the district attorney, as a reason to depart on Petitioner's sentence and to sentence Petitioner to consecutive sentences;

"c.   The court sentenced Petitioner to an upward departure based on permanency of injury to the victim, contrary to a stipulation by the parties of serious physical injury, not permanent physical injury;

"d.   The court considered an incorrect PSI in sentencing."

On October 31, 1997, defendant filed a motion to strike, *inter alia*, subparagraphs 6 (2)(c) and (e) and 6 (3)(a), (b), (c) and (d) of the first amended petition for post-conviction relief. Defendant asserted that, under the analysis of *Palmer v. State of Oregon*, 318 Or 352, 354, 867 P2d 1368 (1994), petitioner was precluded from litigating those claims, in that "all of the claims at issue in this Motion to Strike are of the sort that could have been raised during the underlying criminal proceeding."[1]

On November 18, 1997, 17 days before the scheduled trial date, petitioner responded to defendant's motion to strike and, in so doing, moved for leave to file a second amended petition for post-conviction relief in which the allegations of subparagraphs 6 (2)(c) and (e) and 6 (3)(a)-(d) would be amended to include allegations that criminal trial counsel had been ineffective in failing to raise those matters. Thus, the proposed amendments would have addressed defendant's objections that those allegations were legally insufficient under *Palmer*.

Defendant opposed petitioner's motion for leave to amend:

"Defendant assumed petitioner was aware of [*Palmer*] and its preclusive effect with respect to post-conviction claims regarding errors that reasonably could have been raised at trial when petitioner filed his first Amended Petition. Defendant has prepared its defense of this case accordingly.

"Because defendant did not believe the claims that have been stricken were viable, defendant has not expended

---

[1] In *Palmer*, the court held that a post-conviction petitioner may not assert "an issue that was not raised at trial in the underlying criminal proceeding, when the petitioner reasonably could have been expected to raise that issue in the trial court and when the petitioner does not assert that the failure to raise the issue constituted inadequate assistance of counsel." 318 Or at 354.

resources in preparing a defense to those claims. Defendant has certainly also not expended resources in preparing a defense to certain claims of prosecutorial misconduct and against the trial court in the event petitioner would choose at trial to couch them as claims of ineffective assistance of counsel.

"In sum, defendant will be prejudiced if this court allows petitioner to amend his petition the week prior to trial."

The trial court granted defendant's motion to strike and, without explanation, denied petitioner's motion for leave to amend his petition. The court subsequently entered judgment against the balance of petitioner's allegations.

■ On appeal, petitioner assigns error to the trial court's denial of leave to amend. ORS 138.610 provides:

"Within 30 days after the docketing of the petition, or within any further time the court may fix, the defendant shall respond by demurrer, answer or motion. No further pleadings shall be filed except as the court may order. The court may grant leave, at any time prior to entry of judgment, to withdraw the petition. The court may make appropriate orders as to the amendment of the petition or any other pleading, or as to the filing of further pleadings, or as to extending the time of the filing of any pleading other than the original petition."

The court's allowance, or denial, of leave to amend under ORS 138.610 is reviewed for abuse of discretion. *Luther v. State of Oregon,* 83 Or App 336, 345, 732 P2d 24, *rev den* 303 Or 483 (1987). In *Temple v. Zenon,* 124 Or App 388, 862 P2d 585 (1993), we indicated that, while the trial court has "broad discretion" with respect to amendment of post-conviction pleadings, the exercise of that discretion should comport with ORCP 23 A's directive that leave to amend "shall be freely given when justice so requires." *Id.* at 390.[2]

---

[2] ORCP 23 A provides, in part:

"A pleading may be amended by a party once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

*Temple*'s invocation of Rule 23 A's "freely given" principle is consistent with the presumption that, unless otherwise specified, post-conviction proceedings are civil,

■      Thus, our review implicates the interplay of two expansive, perhaps amorphous, principles: Leave to amend is to be *"freely* given when justice so requires," and the trial court exercises *"broad"* authority in making that "discretionary determination." *Temple*, 124 Or App at 391. Our cases have, in fact, endorsed a "broad" view of that authority. Indeed, we are unaware of any appellate decision under ORS 138.610 or ORCP 23 A reversing the allowance or denial of leave to amend. Nevertheless, "discretion" is not absolute. There are limits. *See Casciato v. Oregon Liquor Control Com.*, 181 Or 707, 715-16, 185 P2d 246 (1947) (trial court ruling represents "abuse of discretion" when it "exceeds the bounds of reason" or is "clearly against[ ] reason and evidence"). *Accord State ex rel Pend-Air v. City of Pendleton*, 145 Or App 236, 247, 929 P2d 1044 (1996), *rev den* 325 Or 45 (1997) (" '[D]iscretion'—or, conversely, 'abuse of discretion'—must be tested against some undescribed criteria. We must identify the criteria there pertinent in this case.").

Only two cases, *Temple* and *Luther*, appear to address motions to amend under ORS 138.610, and neither explicitly identifies the criteria that inform and circumscribe the exercise of discretion. Still, those cases, while not purporting to be comprehensive, at least touch on four considerations bearing on the appropriate exercise of discretion: (1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendments.

In *Luther*, for example, we affirmed the trial court's denial of the petitioner's mid-trial attempt to amend his pleadings, which had "related [only] to the way in which [criminal] trial counsel conducted the trial," to add a claim "based on constitutionally deficient performance in investigating the case and preparing for trial." 83 Or App at 345. In denying the amendment, the trial court had explained:

not criminal, in character. *See Schelin v. Maass*, 147 Or App 351, 355, 936 P2d 988, *rev den* 325 Or 446 (1997); *Kumar v. Schiedler*, 128 Or App 572, 577, 876 P2d 808 (1994) (De Muniz, J., concurring) ("Post-conviction is a civil proceeding[.]").

" 'I think that at this stage of the proceedings, both parties are entitled to—the State and the Petitioner are entitled to rely on the positions that they have taken in a carefully prepared case.' " *Id.*

We affirmed: "The amendment was made well into the trial, and, as the court noted, it would have been a completely new ground for relief." *Id.*

In *Temple*, the petitioner sought to add 35 new specifications of inadequate assistance on the day of trial and claimed that his post-conviction attorney had refused to make the requested amendments. The trial court refused to allow the amendments, explaining:

" 'My main reason for denying both your motions is that they are made today on the date of trial. Almost 100 percent of motions to amend a complaint on the day of trial are going to be denied by any judge unless both parties agree.'
* * *

"* * * * *

" 'I think [petitioner's attorney] was correct in not amending the Petition to the extent of including all of the complaints you've made there. That's because she has legal training. She knows what the Court will listen to and what the Court won't listen to.' " 124 Or App 391-92 n 3.

The petitioner appealed, asserting that "justice required that he be allowed leave to amend, because the denial effectively foreclosed his ability to be heard on those issues." 124 Or App at 391. After acknowledging that "post-conviction relief is the exclusive method in Oregon for collaterally attacking a conviction," and noting that, in general, petitioners are limited to a single post-conviction action,[3] *id.*, we concluded, nevertheless, that the trial court had not erred:

"[Petitioner] did not explain to the court why his new claims might change the outcome of the proceeding. * * * We have reviewed petitioner's requested amendments and conclude

---

[3] ORS 138.550(3) provides:

"All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 or 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."

that they are either subsumed in the allegations of the first amended petition, raise no prejudicial error or are incomprehensible. We find no abuse of discretion in the refusal to permit an amendment." 124 Or at 392.

Referring to the same considerations assessed in *Luther* and *Temple*, we conclude that, given the particular combination of circumstances presented here, the trial court's denial of leave to amend exceeded the bounds of reasonable discretion.

■　First, the proposed amendments were not the product of some unilateral effort by petitioner to interject entirely new claims into the litigation. Rather, the amendments were proffered in direct response to defendant's motion to strike. That is, they were proffered to cure deficiencies that defendant identified. In that regard, the circumstances here paralleled the common sequence in civil litigation where the defendant's first responsive pleading is a Rule 21 motion and, if that motion is successful, the plaintiff, typically, is permitted to replead.

Defendant identified no particular prejudice he would suffer if the amendments were allowed. The sole "prejudice" that defendant asserted was that he would be required to defend certain claims that would otherwise have been dismissed for lack of a *Palmer* allegation: "Because defendant did not believe the claims that have been stricken were viable, defendant has not expended resources in preparing a defense to those claims." Absent from that generic assertion, which could apply to *any* amendment, is any description of *how* defendant would be prejudiced. What additional time or resources, if any, would have to be expended? How, if at all, would that impair or compromise defendant's ability to defend petitioner's allegations in their entirety? Certainly, defendant's objection did not assert that he had completed his investigation and trial preparation and would now have to undertake new and extensive efforts to address the amended allegations.[4] *Compare, e.g., Luther*, 83 Or App at 345.

---

[4] In his brief on appeal, defendant asserts, for the first time, that:

"To respond to those new claims of inadequate assistance of counsel, defendant presumably would have wanted to determine the factual basis for those

With respect to timing, the proposed amendments were requested 17 days before trial in direct response to defendant's first responsive pleading.[5] Unlike in *Temple* and *Luther*, there is no indication in this record that the proposed amendments would, in fact, have necessitated any trial set over, much less a set over that would have materially implicated the trial court's docket management.

Finally, on this record, we cannot assess the likely success of the claims as amended. The amendments, if allowed, would, at least, have eliminated a fatal defect and rendered those claims facially legally sufficient. *See Palmer*, 318 Or 354. Thus, that consideration appears to be neutral.

None of those considerations—the nature of the amendment, the type and degree of prejudice to the opposing party, the timing and impact on the court's docket management, or the likelihood of success of the amended claims—is, by itself, decisive in this case. Nevertheless, the combination of the first three considerations is conclusive. In the particular circumstances presented here, the trial court's denial of petitioner's motion to file a second amended petition amending the allegations of subparagraphs 6 (2)(c) and (e) and 6 (3)(a), (b), (c) and (d) of the first amended petition was an abuse of discretion. Accordingly, we reverse and remand for further proceedings as to those allegations, as amended.

---

new claims, and would have needed to determine counsel's reasons for failing to take the actions suggested. To do so, defendant may well have needed to take petitioner's deposition, to take counsel's deposition, and to otherwise gather pertinent evidence. To take those actions would have required the state to expend additional time and resources, largely for the purpose of contacting witnesses it already had contacted. (*See, e.g.,* Ex's 105 and 107, Ferder Affidavits)."

Nothing in the record supports those assertions—which were never made to the trial court. Contrary to defendant's representations, petitioner's criminal defense attorney, submitted only one affidavit in the case, exhibit 104. That affidavit was subscribed on December 3, 1997, nine days *after* defendant filed his opposition to petitioner's motion for leave to amend.

[5] As noted, at the time of trial, the case was less than 11 months old. The formal petition for post-conviction relief was filed in early October 1997, two months before the trial date, and defendant's first responsive pleading, the motion to strike, was filed in late October, five weeks before the trial date. *Compare Downs v. Waremart*, 137 Or App 119, 140-41, 903 P2d 888 (1996), *rev'd on other grounds* 324 Or 307, 926 P2d 314 (1996) (trial court did not abuse discretion in denying leave to amend to add entirely new claim for wrongful discharge less than 30 days before trial date in two-year-old case).

Trial court's denial of petitioner's motion to file second petition for post-conviction relief reversed and remanded for further proceedings; otherwise affirmed.